UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HUSSANPREET SINGH,

                    Petitioner,

         v.

KRISTI NOEM, et al.,

                    Respondents.

CASE NO. C26-0302JLR

ORDER

## I.    INTRODUCTION

Before the court is Petitioner Hussanpreet Singh's amended 28 U.S.C. § 2241 petition for writ of habeas corpus.  (Am. Pet. (Dkt. # 4); Traverse (Dkt. # 8).)  The Government[1] opposes the petition.  (Return (Dkt. # 5).)  The court has considered the

---

[1] The Federal Respondents are MarkWayne Mullin, Secretary of the Department of Homeland Security ("DHS"); Pamela Bondi, United States Attorney General; Todd Lyons, Acting Director of Immigration and Customs Enforcement ("ICE"); and Laura Hermosillo, Acting Field Office Director for the Seattle Field Office of ICE (together, the "Government"). (Am. Pet. ¶¶ 9-12.)

ORDER - 1

parties' submissions, the relevant portions of the record, and the governing law.  Being fully advised, the court GRANTS Petitioner's petition for writ of habeas corpus.

## II.   BACKGROUND

Petitioner is a 21-year-old citizen and national of India who entered the United States on October 31, 2023.  (Am. Pet. ¶¶ 1, 19-20.)  He was apprehended by DHS and issued a Notice to Appear charging him as "inadmissible under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ('INA')."  (Rosa Decl. (Dkt. # 6) ¶ 5.)  After Petitioner expressed a fear of return to India, the Government released Petitioner on an Order of Release on Recognizance ("OREC") on December 20, 2023.  (Am. Pet. ¶¶ 1, 21; Rosa Decl. ¶ 6; Wong Decl. (Dkt. # 7) Ex. 3 (OREC).)  Petitioner filed a timely application for asylum on January 12, 2024, and asserts that he has complied with all conditions of release.  (Am. Pet. ¶ 2.)

On December 17, 2025, Petitioner "was walking toward the International Border between United States and Canada in a wooded area near Peace Arch, in Blaine, Washington."  (*Id*. ¶¶ 3, 23.)  Petitioner subsequently attempted to enter Canada at the international boundary line, but not at a port of entry, and enter an awaiting vehicle. (Rosa Decl. ¶ 9; Am. Pet. ¶ 23.)  When the Royal Canadian Mounted Police approached the vehicle, Petitioner ran away from the vehicle and back into the United States.  (Am. Pet. ¶ 23.)  U.S. Border Patrol then apprehended Petitioner and placed him under arrest. (Rosa Decl. ¶ 9.)  Petitioner asserts that the Government did not assess whether he presented a flight risk or danger to the community prior to his re-arrest and did not provide him a hearing before a neutral decisionmaker.  (Am. Pet. ¶ 4.)  On December 18,

ORDER - 2

2025, the Government transported Petitioner to the Northwest ICE Processing Center, where he remains to this day. (*See* Rosa Decl. ¶ 10.)

Based on the events of December 17, 2025, Petitioner is now facing a pending federal misdemeanor charge for improper entry by an alien in violation of 8 U.S.C. § 1325(a). (Am. Pet. ¶ 24.) This non-violent misdemeanor, according to Petitioner, does not trigger mandatory detention under 8 U.S.C. § 1226(c) and does not constitute a removable offense. (*Id*. ¶ 26.)

On January 14, 2026, Petitioner appeared *pro se* before the immigration judge for an initial master calendar hearing. (Rosa Decl. ¶ 11.) The IJ continued Petitioner's case to allow him to pay fees regarding his previously filed application for relief. (*Id*.) On that same day, Petitioner, represented by counsel, appeared before the IJ for a bond hearing. (*Id*. ¶ 12.) The IJ (1) denied bond due to lack of jurisdiction; (2) found that Petitioner was subject to mandatory detention under *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025); and (3) ordered in the alternative that the IJ would have denied bond if it had jurisdiction because Petitioner was a flight risk. (*Id*.)

On February 11, 2026, the DHS Office of Enforcement and Removal Operations ("ERO") revoked Petitioner's OREC based on his alleged failure to comply with the conditions of his release. (Wong Decl. Ex. 4 (OREC revocation); Rosa Decl. ¶ 13.) On the same day, Petitioner was scheduled to appear before an IJ for his continued master calendar hearing. (*Id*. ¶ 14.).

On January 27, 2026, Petitioner filed a petition for writ of habeas corpus. (Pet. (Dkt. # 1).) On February 10, 2026, Petitioner filed an amended petition. (Am. Pet.)

ORDER - 3

Petitioner seeks five forms of relief: (1) a writ of habeas corpus ordering his immediate release; (2) a permanent injunction prohibiting his re-detention during the pendency of his removal proceedings absent written notice and a pre-deprivation hearing; (3) an injunction prohibiting the Government from placing GPS ankle monitors on him upon his release absent clear and convincing evidence that he is a flight risk or danger to the community; (4) a declaration that Petitioner's re-detention absent an individualized determination before a neutral decision maker violates his due process rights; and (5) an award of attorneys' fees and costs. (*Id*. at 11-12.) On February 11, 2026, the Government filed a return. (Return.) On February 17, 2026, Petitioner filed a traverse. (Traverse.) The petition is now fully briefed and ripe for the court's consideration.[2]

### III.   ANALYSIS

The court addresses each of Petitioner's requests for relief in turn.

**A.   The Government's Re-detention of Petitioner is Unlawful.**

Petitioner contends that his arrest and re-detention without notice and an opportunity to be heard violates the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" (Am. Pet. ¶¶ 6-7, 41); U.S. Const. Amend. V. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning

---

[2] On March 27, 2026, the Government filed a notice of its intent to transfer or remove Petitioner from the United States on or after March 31, 2026. (Notice (Dkt. # 10).) The Government does not state the location or country to which it intends to transfer or remove Petitioner. (*See id.*)

ORDER - 4

of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Furthermore, the right to due process extends to "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

Thus, even when the Government believes that it has a lawful basis for detaining a noncitizen, it remains subject to the requirement to effectuate that detention in a manner that comports with due process. *See Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law."); *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("While the temporary detention of [noncitizens] may sometimes be justified by concerns about public safety or flight risk, the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process[.]"); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025) ("[T]he fact that the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process.").

The Government argues, in pertinent part, that (1) Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b) because he is an applicant for admission, *see Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), and (2) as such, he received all the process due prior to his re-detention. (*See generally* Return.) The Government

ORDER - 5

relies on a recent Fifth Circuit decision to support its position that noncitizens, such as Petitioner, who are inadmissible are subject to mandatory detention.  (Return at 7 (citing *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026).)  This Fifth Circuit decision, however, is not binding on this court and, as the dissent acknowledges, "[t]he overwhelming majority of courts in [the Fifth Circuit] and elsewhere have recognized that the government's position [on 8 U.S.C. § 1225(b)(2)(A)] is totally unsupported." 166 F.4th at 509.  Furthermore, *Buenrostro-Mendez* does not address the revocation of ORECs and other release orders or the minimum constitutional process due before the Government may re-detain a noncitizen it previously released.  Accordingly, the court finds *Buenrostro-Mendez* unpersuasive.

Even if *Buenrostro-Mendez* were persuasive, however, the court need not consider the merits of the Government's arguments regarding its authority to detain Petitioner. This is because, where, as here, a noncitizen brings a habeas petition to challenge their detention as violative of due process, the Government's alleged basis for the Petitioner's detention is "irrelevant[.]"  *Sarwari v. Wamsley*, C26-00121TL, 2026 WL 279968, at *3 (W.D. Wash. Feb. 3, 2026) (holding that the statutory basis for the Government's detention of Petitioner is "irrelevant" because "the habeas petition before the Court is not directed at [the Government's] classification of Petitioner, but challenges his re-detention . . . as violative of due process").

Because Petitioner challenges an administrative action depriving him of his liberty, the parties agree that the *Mathews* balancing test applies here.  (Am. Pet. ¶¶ 36-37; Return at 8-10.)  The *Mathews* test determines whether an administrative

ORDER - 6

procedure provides the process constitutionally due and weighs three factors: (1) the petitioner's private interest, (2) the risk of an erroneous deprivation, and (3) the Government's interest.  *See Mathews*, 424 U.S. at 335.  In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that the *Mathews* test applies in "the immigration detention context."  53 F.4th 1189, 1206-07 (9th Cir. 2022).  District courts in this Circuit have also applied the *Mathews* test in similar circumstances since then. *See, e.g.*, *Torres v. Hermosillo*, No. C25-2687LK, 2026 WL 145715, at *6 (W.D. Wash. Jan. 20, 2026); *Sira-Hurtado v. Hermosillo*, No. C25-2173KKE, 2025 WL 3294986, at *2 (W.D. Wash. Nov. 26, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025).

Petitioner contends that the *Mathews* test compels a finding that due process required the Government to provide notice and an opportunity to respond *before* he was deprived of his liberty.  (Am. Pet. ¶¶ 29-41 (citing *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970)).)  In response, the Government asserts that Petitioner's re-detention is "consistent with statute" and "his due process rights."  (*See* Return at 1.)  The court agrees with Petitioner for the reasons set forth below.

As to the *Mathews* factors, the court adopts the reasoning set forth by the Honorable Kymberly K. Evanson in *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316 (W.D. Wash. 2025) and finds (1) Petitioner's interest in not being detained is "the most elemental of liberty interests[,]" (2) the risks of erroneous deprivation of liberty are high, and (3) the Government's interest in arresting and detaining a noncitizen without a hearing is low where the noncitizen was previously released.  *Id*. at 1320-24 (citation

ORDER - 7

omitted). Therefore, the court concludes that the *Mathews* factors weigh in Petitioner's favor and his re-detention without a pre-deprivation hearing violated his due process rights. *See also A.B.J.C. v. Hermosillo*, No. C26-0185JNW, 2026 WL 497097, at *2 (W.D. Wash. Feb. 23, 2026) (compiling cases in this District and elsewhere in which courts required the Government to provide due process to noncitizens before revoking supervised release and re-detaining them).

The court rejects the Government's arguments to the contrary. With respect to the first *Mathews* factor, the Government asserts vaguely that it re-detained Petitioner "based on his failure to comply with the conditions of release" set forth in his OREC. (Return at 9.) The Government, however, fails to specify the nature of Petitioner's alleged violation or provide the court information by which it may evaluate whether Petitioner's alleged conduct would actually violate the terms of his release. (*See generally* Return.) Instead, the Government cites, without explanation, the document revoking Petitioner's OREC and the declaration of deportation officer Anthony Rosa. (*See* Return at 9 (citing OREC revocation; Rosa Decl. ¶ 13).) But these documents offer little insight into the Government's reasoning. Instead, both simply make conclusory statements that the Government "revoked Petitioner's OREC based on his failure to comply with the conditions of his release." (Rosa Decl. ¶ 13; *see also* OREC revocation at 1 (stating only that "[t]he alien failed to comply with the conditions of release").) Given the Government's total failure to detail the conduct that led to the revocation of Petitioner's release, the court concludes that the first *Mathews* factor unequivocally favors Petitioner.

ORDER - 8

The Government fares no better as to the second *Mathews* factor.  Here the Government contends that the risk of erroneous deprivation of Petitioner's liberty is "minimal" because "Petitioner knew what conditions he must abide by to continue on OREC."  (Return at 10.)  The Government, however, again fails to detail the nature of the alleged violation.  (*See id.* (stating that ERO decided to revoke Petitioner's release "because Petitioner had violated the conditions of his OREC[,]" but failing to identify the violative conduct).)  To the extent the Government refers to Petitioner's pending misdemeanor charge, it offers no authority or argument for the assertion that such conduct constitutes a violation of the OREC or is a valid legal basis for setting aside the Supreme Court's clear direction that the Constitution requires "that an individual be given an opportunity for a hearing *before* he is deprived of any significant" liberty interest.  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 n 3, 542 (1985) (emphasis in the original) (citation omitted); *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in the original, and compiling cases holding that "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property"); (*See generally* Return.)  Thus, the court concludes that the second *Mathews* factor also clearly favors Petitioner.

Finally, as to the third *Mathews* factor, the Government fails to meaningfully address whether it has an interest in re-detaining previously released noncitizens without a hearing, asserting only that "DHS has a significant interest in being able to release a noncitizen on conditions of release and be able to revoke that release when those conditions are violated." (Return at 10.)  The Government further maintains that, if it is

ORDER - 9

required to provide pre-deprivation hearings when a noncitizen is suspected of OREC violative conduct, such a requirement "would inhibit the Executive's function of immigration enforcement." (*Id.*)  The Government again offers no authority or support for these assertions.  (*See generally* Return.)  Courts in this District that have considered this argument, however, have rejected it, concluding that the Government's interest in re-detaining noncitizens who were previously released is low where the costs of providing a pre-deprivation hearing "are far outweighed by the risk of erroneous deprivation of the liberty interest at issue." *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *see also Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest [the petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.").  Thus, the court determines that the third *Mathews* factor unambiguously favors Petitioner.

In sum, the court finds that all three *Mathews* factors weigh in Petitioner's favor. Therefore, his re-detention without a pre-detention hearing violated Petitioner's due process rights.

**B.     The Court Grants Petitioner's Requests for Permanent Injunctions.**

In addition to his immediate release, Petitioner requests two injunctions: (1) one prohibiting his re-detention during the pendency of his removal proceedings absent written notice and a pre-deprivation hearing and (2) one prohibiting the Government from placing GPS ankle monitors on him upon his release absent clear and convincing evidence that Petitioner is a flight risk or danger to the community.  (Pet. at 12.)  The Government does not respond at all to Petitioner's requests for relief.  (*See generally*

ORDER - 10

Return.)  Having found that the Government violated Petitioner's due process rights, the court further finds that issuing injunctive relief is appropriate.

The court may provide injunctive relief if Petitioner meets the standard for a permanent injunction.  "According to well-established principles of equity, a [petitioner] seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief."  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  Petitioner must demonstrate: (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between him and the Government, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.  *Id*. (citations omitted).  "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies."  *Swann v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 1, 15 (1971); *see also Stone v. City & Cnty. of San Francisco*, 968 F.2d 850, 861 (9th Cir. 1992) ("Federal courts possess whatever powers are necessary to remedy constitutional violations because they are charged with protecting these rights.") (citations omitted).

First, Petitioner has suffered irreparable harm, and such harm is likely to recur absent injunctive relief to protect against further constitutional violation.  Specifically, the Government has already detained him without due process and identified him as a target for detention.  Despite this court's many orders holding that the Government's conduct in revoking release and re-detaining noncitizens without due process is

unconstitutional, the conduct has continued.  Thus, absent injunctive relief, Petitioner may be subject to the same violative conduct again.  The other *eBay* factors similarly favor injunctive relief.  Monetary damages are an inadequate remedy for deprivation of liberty; requiring the Government to follow constitutional procedures imposes no undue hardship, and the public interest favors compliance with the law.  *See Palacios*, *v. Hermosillo*, No. C26-491JNW, 2026 WL 686138, at *10 (W.D. Wash. Mar. 11, 2026) (so holding).  Courts in this district routinely grant such relief under comparable circumstances.  *See id*. (compiling cases in this District so holding).

The court also finds it appropriate to order that Petitioner shall be released without GPS monitoring.  Here, the court adopts the reasoning in *Palacio v. Hermosillo*, No. C25-1983RSM-MLP, 2025 WL 4033287, *2-3 (W.D. Wash. Dec. 22, 2025).  Like the petitioner in *Palacio*, Petitioner in this case was previously released after a determination that he did not present a danger to the community or risk of flight.  *See* 8 C.F.R. § 1236.1(c)(8) (authorizing certain officers to release noncitizens on conditions of release only if the noncitizen has "demonstrate[d] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that [they are] likely to appear for any future proceeding"); *see also Palacios*, 2026 WL 686138 at *10 ("Indeed, Petitioners' release on parole or on their own recognizance could only have occurred if the Government affirmatively found that they were not a danger to society or a flight risk.").  The Government did not place Petitioner on GPS monitoring as a condition of his prior release.  (*See* OREC revocation (showing that the Government did not subject Petitioner to the Alternatives to Detention program or electronic monitoring).)  The

ORDER - 12

Government has made no assessment that supports a change to that determination. (*See* Pet. ¶ 4; *see generally* Return.) The court thus finds that arbitrary placement of monitoring would violate due process.

For the foregoing reasons, the court finds that Petitioner is in custody in violation of the Constitution of the United States. Petitioner must be released and may not be re-detained without a hearing before an immigration judge. The Government is enjoined from subjecting Petitioner to GPS monitoring absent clear and convincing evidence that Petitioner is a flight risk or danger to the community and that no other alternatives would mitigate those risks.

**C.    Request for Attorneys' Fees and Costs.**

Petitioner's request for fees should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

### IV.    CONCLUSION

Accordingly, the court orders as follows:

(1) The petition for a writ of habeas corpus (Dkt. # 1) is GRANTED;

(2) Respondents SHALL release Petitioner Hussanpreet Singh from detention within FORTY-EIGHT (48) hours pursuant to the conditions of his most recent Order of Release on Recognizance;

(3) Respondents SHALL NOT subject Petitioner to GPS monitoring as a condition of his release, absent clear and convincing evidence that Petitioner is a flight risk or danger to the community and that no other alternatives mitigate those risks;

ORDER - 13

(4) Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them SHALL NOT re-detain Petitioner until after an Immigration Court hearing is held (on adequate notice) to determine whether detention is appropriate, or until Petitioner is issued a final order of removal;

(5) Within SEVENTY-TWO (72) hours of this Order, Respondents SHALL file with the court a status report confirming that Petitioner has been released from custody and informing the court of the date and time of his release.

Dated this 31st day of March, 2026.

_____
JAMES L. ROBART
United States District Judge

ORDER - 14